UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MONTEZ KENNEDY,

        Plaintiff,

v.                              Case No. 2:07-cv-207
                                      HON. R. ALLAN EDGAR
DENVER MCBURNEY, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Montez Kennedy filed this prisoner 42 U.S.C. § 1983 action against defendants Denver McBurney, J. Naeyaert, and Lloyd Rapelje. Plaintiff also named a John Doe defendant in his original complaint.[1] Plaintiff alleges that while housed at Alger Maximum Correctional Facility defendants violated his First Amendment, Eighth Amendment and Fourteenth Amendment rights. Plaintiff alleges that on June 22, 2007, defendant McBurney was making rounds while plaintiff was completing forms to send legal mail to the Wayne County Probate Court and the Wayne County Circuit Court. Defendant McBurney said that he would return to get the forms because plaintiff was still in the process of completing them. Plaintiff went to yard and left his legal mail unsealed. Plaintiff claims that while he was at yard, defendant McBurney entered his cell, read his mail, and discussed the mail with other staff members. Plaintiff claims that defendant McBurney discarded the letters, instead of placing them in the outgoing mail system. Plaintiff alleges that he

---

[1]Plaintiff's proposed second amended complaint does not include a John Doe defendant.

was unable to file a superintending control complaint over the Wayne County Probate Court. Plaintiff asserts that defendant McBurney retaliated against him because of past complaints.

Plaintiff asserts that on July 22, 2007, defendant Joseph Naeyaert stated to plaintiff "Do you think your going to get your inheritance out of your uncle." The mail read by defendant McBurney related to plaintiff's uncle's will. Plaintiff claims that defendant Naeyaert also read and discarded plaintiff's legal mail. Plaintiff alleges that he discusses legal options with jail house lawyers while he is on yard time. He was discussing options on June 28, 2007, with another inmate. Defendant Naeyaert and another officer escorted plaintiff off the yard that day. On June 29, 2008, plaintiff was informed that he was on yard restriction. Plaintiff was not issued a misconduct ticket. Plaintiff was placed on a thirty day yard restriction because he brought personal property out to the yard. Plaintiff states that he never received a copy of the restriction. Plaintiff asserts that his yard restriction was purely a retaliatory act by defendant Naeyaert. Plaintiff also claims that he was denied necessary recreation to maintain his health. Plaintiff further claims that his procedural due process rights were violated by defendant Naeyaert for failing to issue a misconduct ticket or Notice of Intent and provide plaintiff an opportunity to contest the restriction at a hearing.

Plaintiff and defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed.

R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered
by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad
v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir.
1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be
insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is
sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also
Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other
evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co.
v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created
factual issue).

        Plaintiff alleges that his right to access the courts was violated.  It is well established
that prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821
(1977). The principal issue in *Bounds* was whether the states must protect the right of access to the
courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.
The Court further noted that in addition to law libraries or alternative sources of legal knowledge,
the states must provide indigent inmates with "paper and pen to draft legal documents, notarial
services to authenticate them, and with stamps to mail them." *Id.* at 824-25.  An indigent prisoner's
constitutional right to legal resources and materials is not, however, without limit.  In order to state
a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."
*Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir.
1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997
WL 720482, *1-2 (6th Cir. Nov. 12, 1997).  In other words, a plaintiff must plead and demonstrate

that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Further, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Defendant McBurney asserts that plaintiff informed him that he had legal mail to send out, but that it was not ready while defendant McBurney did his rounds. Defendant McBurney told plaintiff that he would return. When defendant McBurney returned to plaintiff's cell, plaintiff was not there. Defendant McBurney took the mail and receipts and left the goldenrod copy in plaintiff's cell. The mail was processed and sent out. Defendant has submitted documentation that shows that the mail was sent to the Wayne County Probate Court and Wayne County Circuit Court. Defendant

McBurney states that he did not read the mail or show it to any other staff member.  It is clear that defendant McBurney did not violate plaintiff's rights.  Further, plaintiff has presented nothing to support his claim that defendants read his legal mail.  Plaintiff has merely speculated that defendants read his legal mail.

Plaintiff alleges that his mail was read, destroyed and that he was given a yard restriction in retaliation for his prior lawsuits and complaints.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff clearly suffered no adverse conduct on his mail issue.  Plaintiff's mail was sent out as requested and plaintiff has presented no evidence that his mail was read or that defendants' alleged actions regarding plaintiff's mail "<u>would</u> deter a person of ordinary firmness from engaging in that conduct."  Plaintiff alleges that his yard time restriction was given in retaliation for his complaints.  Plaintiff was placed on a yard restriction for thirty days because he violated the rules when he carried personal property out to the yard.  The rule provides that:

> Prisoners will only be permitted to take a reasonable amount of approved clothing to the yard Pajamas are not considered approved clothing.  Coats must be worn when exiting the cell.  Prisoners found

in possession of non-allowable items will forfeit the activity and will
be subject to the disciplinary process.

Plaintiff has not denied that he had personal property in the yard.  Instead, plaintiff claims that he

had no notice of the rule, no property was confiscated, and defendants failed to appropriately

document the violation.  Plaintiff has not shown that he was retaliated against, simply by the

enforcement of a rule that may have been unknown to plaintiff.  In the opinion of the undersigned,

there exists no evidence to support a claim of retaliation against defendants.

Plaintiff asserts that his due process rights were violated because he never received

notice that he violated a prison rule and did not receive a hearing prior to the imposition of the yard

restriction.  The Michigan Department of Corrections does not require a Notice of Intent or hearing

before imposing a yard restriction on an inmate.  Further, the Fourteenth Amendment does not

require due process protection for every inconvenience imposed by the State.  *Sandin v. Conner*, 515

U.S. 472, 115 S. Ct. 2293 (1995).  In *Sandin*, the plaintiff alleged that prison officials deprived him

of procedural due process by refusing to allow him to present witnesses during a disciplinary hearing

and then sentencing him to segregation for misconduct.  *Sandin*, 515 U.S. at 474, 115 S. Ct. at 2294.

In reversing the Ninth Circuit's decision that the prisoner had a liberty interest in remaining free of

disciplinary segregation, the Supreme Court abandoned the search for mandatory language in

prisoner regulations as previously called for under *Hewitt v. Helms*, 459 U.S. 460 (1983), and ruled

instead that it was time to return to the due process principles which were established in *Wolff v.

McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976).  *Sandin*, 515 U.S.

at 483, 115 S. Ct. at 2300 (internal citations omitted).

In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so

extreme as to implicate rights arising directly from the Due Process Clause itself.  *Sandin*, 515 U.S.

- 6 -

at 483-484, 115 S. Ct. at 2300 (internal citations omitted).  In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300.  However, such restraints are rare and do not include, for example, transfer into solitary confinement. *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301.  Nor does placement in administrative segregation normally constitute such a hardship. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995). In addition, Plaintiff has no right to prison employment or to early release on parole. *Greenholtz v. Inmates, Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989).  Moreover, there is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated. *Meachum*, 427 U.S. at 223-29[2]; *Olim v. Wakinekona*, 461 U.S. 238 (1983).

A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey*, 62 F.3d at 790-791.  Pursuant to *Sandin*, "a liberty interest determination is to be made based on whether it will

---

[2]In *Meachum v. Fano*, 427 U.S. 215, 223-229 (1975), the Court held that transfers between prisons of different severity, such as between a medium security prison and a maximum security prison, did not deprive the prisoner of liberty within the meaning of the Due Process Clause.

affect the overall duration of the inmate's sentence, and there is no evidence here that the segregation will impact Plaintiff's sentence." *Jones*, 155 F.3d at 812.  The Sixth Circuit has determined that a prisoner's placement in administrative segregation for over a year is not an atypical or significant hardship as to create a liberty interest in due process. *Mackey v. Dyke*, 111 F.3d 460, 461-63 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997).  In the opinion of the undersigned, a temporary yard restriction imposed for a violation of prison rules does not cause an atypical or significant hardship as to create a liberty interest in due process.

Plaintiff alleges that the thirty day yard restriction violated his Eighth Amendment rights.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  Eighth Amendment standards entitle prisoners to exercise sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920-927 (6th Cir. 1985).  Defendant Naeyaert requested a temporary yard restriction and defendant McBurney approved the request.  Plaintiff has failed to show that the temporary restriction caused

- 8 -

him any hardship.  Under these circumstances, plaintiff cannot show a violation of the Eight Amendment.

Alternatively, it is recommended that plaintiff's monetary damage claims be dismissed under qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the

- 9 -

unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned defendants are entitled to the defense of qualified immunity because plaintiff cannot establish that defendants violated his constitutional rights.

- 11 -

Accordingly, it is recommended that defendants' motion for summary judgment (Docket #21) be granted and that this case be dismissed in its entirety.  It is further recommended that plaintiff's motion for summary judgment (Docket #32) be denied and plaintiff's motion to amend the complaint (Docket #45) be granted.[3]

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 18, 2009

---

[3]In making this recommendation I considered plaintiff's proposed amended complaint.

- 12 -